Keith M. Lundin
U.S. Bankruptcy Judge

Dated: 08/13/10



# UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| In re: TARUN N. SURTI and LATA T. SURTI,<br><br>*Debtor.* | Case No. 3:09-01213<br>Chapter 11<br><br>Hon. Keith M. Lundin |
| HHP-BRENTWOOD, L.L.C.,<br><br>*Plaintiff,*<br><br>*v.*<br><br>Aurora Loan Services, LLC,<br><br>*Defendant.* | Adv. No. 3:10-0064A |

## MEMORANDUM

On cross-motions for summary judgment, the issue is whether a Deed of Trust on tenancy by the entirety property that was initialed on each page and signed by both spouses as "Borrower" encumbers the entirety estate when one spouse is defined as a "Borrower" who signed the Note and the other spouse is a "Borrower . . . 'co-signer'" who did not sign the Note. The Deed of Trust encumbers the entirety estate. Defendant's motion for summary judgment is granted; Plaintiff's motion for summary judgment is denied. The following are findings of fact and conclusions of law. FED. R. BANKR. P. 7052.

## I. FACTS

Tarun N. Surti and Lata T. Surti are husband and wife, and Chapter 11 debtors. By warranty deed recorded June 22, 1993, the Surtis acquired real property at 899 South

1

Curtiswood Lane, Nashville, TN (the "Property"). (J. Stip. Ex. 1.) The Surtis have continuously owned the Property as tenants by the entirety.

On December 12, 2003, Lata Surti, identified as "a married person" and defined as "Borrower," executed a Deed of Trust against the Property in favor of First Horizon Home Loan Corporation to secure a loan of $1.2 million.[1] (J. Stip. Ex. 3.) This Deed of Trust was initialed on each page by both Lata and Tarun Surti,[2] and executed by each on preprinted lines labeled "Borrower." Lata Surti's name was typewritten below the "Borrower" line on which she signed. Tarun Surti's name was printed by hand below the "Borrower" line on which he signed. Immediately before the lines on which the Surtis signed, the document states: "BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument[.] " (J. Stip. Ex. 3, at 11.)

The acknowledgment only named "Lata N. Surti, a married person."[3] The legal description identifies the Property as "the same property conveyed to Tarun N. Surti and wife, Lata T. Surti, by Deed from, the Saar Foundation, Inc. dated 6/18/93[.]" (J. Stip. Ex. 3, at 2 & Ex. A.) Through a series of recorded assignments (J. Stip. Exs. 4-6) this Deed of Trust found its way to Defendant, Aurora Loan Services LLC (the "Aurora Deed of Trust").

---

[1] This loan paid off a prior loan and Deed of Trust to America's Wholesale Lender. (Cheryl Marchant Aff. at 2.)

[2] Immaterially, Lata Surti signed on page 11 but did not also initial page 11.

[3] Plaintiff initially challenged defendant's lien on the ground of deficient acknowledgment. There is no acknowledgment for Mr. Surti, and Mrs. Surti's name is written as Lata N. Surti, rather than Lata T. Surti. Plaintiff abandoned this argument and conceded for summary judgment purposes that the technically deficient acknowledgment was rendered effective by recent statutory changes found at TENN. CODE ANN. § 66-24-101(e).

2

On page 1, in a section labeled "DEFINITIONS," the Aurora Deed of Trust states: "Borrower is LATA N.[4] SURTI, A MARRIED PERSON. Borrower is the trustor under this Security Instrument." (J. Stip. Ex. 3, at 1.) Just below, in that same section, "'Note'" is defined as: "the promissory note signed by Borrower. . . . The Note states that Borrower owes Lender . . . $1,200,000.00 . . . plus interest." (J. Stip. Ex. 3, at 1.)

On page 2, the Aurora Deed of Trust provides for the "TRANSFER OF RIGHTS IN THE PROPERTY," including: "Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the county of Davidson[.]" (J. Stip. Ex. 3, at 2.) A legal description of the South Curtiswood Lane property is attached, including a Derivation Clause that identifies the Property as owned by "Tarun N. Surti and wife, Lata T. Surti." (J. Stip. Ex. 3, at 2 & Ex. A.) On page 3, "BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbranes of record." (J. Stip. Ex. 3, at 3.)

Paragraph 13 on page 8 of the Aurora Deed of Trust provides:

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security

---

[4]    On page 1 of the Aurora Deed of Trust, the middle initial "N." for Lata Surti was marked out by hand and a "T" overwritten and initialed by "L.T.S."

Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

(J. Stip. Ex. 3, at 8.)

On January 16, 2004, "TURAN N. SURTI"[5] and "LATA N. SURTI"[6] executed a Deed of Trust against the Property to secure a $250,000 home equity line of credit in favor of First Tennessee Bank. (J. Stip. Ex. 7.) The acknowledgment reads "Turan N. Surti and wife Lata T. Surti." (J. Stip. Ex. 7, at 4.) This Deed of Trust was recorded on February 26, 2004.

On August 30, 2007, "Tarun N. Surti and wife, Lata T. Surti" executed a Deed of Trust, Assignment of Leases and Security Agreement against the Property to secure a loan of $1,000,000 to Tarun N. Surti from Plaintiff, HHP-Brentwood, L.L.C. (the "HHP Deed of Trust). (J. Stip. Ex. 8.) In the HHP Deed of Trust, an exhibit listed "PERMITTED ENCUMBRANCES" including:

> 6. Deed of Trust dated December 12, 2003, executed by Lata N. Surti, a married person, in favor of First Horizon Home Loan Corporation, in the sum of $1,200,000 of record as instrument No. 20031218-0180613, said Register's Office, as assigned to Mortgage Electronic Registration Systems, Inc., of record as Instrument No. 20040702-00779003, said Register's Office. Appointment of Successor Trustee of record as Instrument No. 20060615-0071289.
> 7. Deed of Trust dated January 16, 2004, executed by Turan N. Surti and Lata T. Surti, in favor of First Tennessee Bank National Association, in the sum of $250,000.00 of record as Instrument No. 20040226-0021881, said Register's Office.

(J. Stip. Ex. 8, at 16.) The HHP Deed of Trust was recorded August 31, 2007.

---

[5] "Turan N. Surti" and "Tarun N. Surti" are apparently the same person.

[6] The "N." is again marked out by hand and a "T." inserted and initialed by "L.T.S."

4

Tarun and Lata Surti filed Chapter 13 on February 5, 2009. Their case was converted to Chapter 11 on June 12, 2009.

Four Deeds of Trust on the Property were scheduled by the Debtors.[7] (J. Stip. Ex. 9, at 6-7.) Aurora filed a secured proof of claim for $1,153,937.93. (J. Stip. Ex. 10.) HHP filed a secured proof of claim for $1,015,000. (J. Stip. Ex. 11.)

Debtors' proposed Chapter 11 plan treats Aurora as fully-secured with a first lien on the Property. In second position, the plan provides for First Tennessee bank with a fully-secured claim of $304,043. In third position, the plan lists Regions Bank with a claim of $242,359, and in fourth position, Plaintiff HHP. Regions Bank and HHP are treated as unsecured creditors based on the absence of value in the Property to secure these claims.

HHP filed this adversary proceeding challenging the validity and extent of Aurora's lien. HHP argues that since Tarun Surti is not identified as a "Borrower" on the first page of the Aurora Deed of Trust, his interest in the Property was not conveyed as security for the Aurora note. Because the Property is owned by the Debtors as tenants by the entirety, HHP continues, the only interest that secures Aurora's note is Lata Surti's survivorship right in the Property. HHP cites *Ethridge v. TierOne Bank*, 226 S.W.3d 127 (Mo. 2007), and *Sullivan v. Mortgage Electronic Registration System, Inc. (In re Wirth)*, 355 B.R. 60 (N.D. Ill. 2005), in support of this outcome.

---

[7] In addition to the first lien of Aurora and the second lien of First Tennessee Bank, the Debtors scheduled Regions Bank with a $250,000 claim secured by the Property. In the proposed plan and disclosure statement, Regions Bank is listed as third lienholder, ahead of HHP's fourth position. Regions Bank is not listed as a "PERMITTED ENCUMBRANCE" in the HHP Deed of Trust. The third lien of Regions Bank is identified in the proposed plan and disclosure statement but not addressed by the parties on summary judgment. No party has suggested that Regions Bank's lien affects the outcome of this litigation between Aurora and HHP.

5

Citing *Kelton v. Brown*, 39 S.W. 541, 543 (Tenn. Ct. App. 1897), Aurora responds that Tennessee law does not require the harsh result HHP seeks. Aurora argues that Mr. Surti signed the Aurora Deed of Trust as a "Borrower" and was identified elsewhere as a "Co-signer" for the explicit purpose of conveying his interest to secure his wife's debt. Aurora cites *Rouse v. Wells Fargo Bank, N.S. ( In re Suhrheinrich)*, Adv. No. 08-3048, 2009 WL 3335027 (Bankr. W.D. Mo. Oct. 14, 2009), in which the bankruptcy court distinguished *Ethridge* on facts Aurora claims apply here.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989). The court is not to "'weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Browning v. Levy*, 283 F.3d 761, 769 (6th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A genuine issue for trial exists only when there is sufficient 'evidence on which the jury could reasonably find for the plaintiff.'" *Id.* (quoting *Liberty Lobby*, 477 U.S. at 252).

The moving party bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. at 325.

6

The burden then shifts to the nonmoving party to produce evidence that would support a finding in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250-52. All inferences are drawn in the light most favorable to the nonmoving party. *Spradlin v. Jarvis (In re Tri-City Turf Club, Inc.)*, 323 F.3d 439, 442 (6th Cir. 2003) (citations omitted). The party opposing a motion for summary judgment, however, "'may not rest upon mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.' The party opposing the motion must 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *In re Tri-City Turf Club, Inc.*, 323 F.3d at 442-43 (internal citations and quotations omitted). *See also Liberty Lobby, Inc.*, 477 U.S. at 248; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "'If after reviewing the record as a whole a rational factfinder could not find for the nonmoving party, summary judgment is appropriate.'" *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998)).

**B. Scope of the Aurora Deed of Trust**

**1. Tarun Surti is a "Borrower" *and* a "Co-signer"**

HHP's argument boils down to this: Tarun Surti is not a "Borrower" because only his wife, Lata Surti, is identified on page 1 as a "Borrower" in the "DEFINITIONS" section of the Aurora Deed of Trust. The "TRANSFER OF RIGHTS IN THE PROPERTY" on page 2 recites that "*Borrower* irrevocably grants and conveys" (emphasis added) the Property in trust. Because Tarun Surti is not a "Borrower" on page 1, the Deed of Trust only conveyed

Lata Surti's survivorship interest into trust.[8]   This argument does not account for all provisions of the Aurora Deed of Trust and makes a nonsense of the document as a whole.

Paragraph 13 on page 8 of the Aurora Deed of Trust explicitly recognizes that there may be a "Borrower" who co-signs this security instrument but does not execute the Note (a "Co-signer").  This is exactly what Tarun Surti did. Paragraph 13 states clearly that a Borrower who is not obligated on the Note is "co-signing this Security Instrument only to *mortgage, grant and convey the co-signer's interest in the property* under the terms of this Security Instrument."  (J. Stip. Ex. 2, at 8) (emphasis added).  This is plain language of conveyance that HHP would ignore.  It is part of the Deed of Trust—just as operative and effective as the "TRANSFER OF RIGHTS IN THE PROPERTY" on page 2 of the document.  Tennessee law requires that the conveyance in Paragraph 13 be given its ordinary meaning: Tarun Surti is a *Co-signer* who signed as *Borrower* on page 11 to convey his interest in the Property in trust to secure his wife's Note.

HHP would avoid this straight-forward reading of Paragraph 13 by creating a nonsense. Paragraph 13 refers to a "Borrower who co-signs . . . ."  HHP refers back to page 1 to claim that only Lata Surti is identified as a "Borrower" in the definition section of the Deed of Trust.  HHP then concludes that Tarun Surti is not a Borrower and therefore cannot be a Co-signer for purposes of Paragraph 13.

---

[8]   In Tennessee, when a married couple takes title to real property, the presumption is that the property is held as a tenancy by the entirety. *See, e.g.*, *Bennett v. Hutchens*, 179 S.W. 629, 630 (Tenn. 1915); *Thorton v. Countrywide Home Loans, Inc.*, Nos. W1999-02086/02087-COA-R3-CV, 2000 WL 33191366 (Tenn. Ct. App. Oct. 23, 2000); *Arango v. Third Nat'l Bank in Nashville (In re Arango)*, 992 F.2d 611, 613 (6th Cir. 1993). When entireties property is used as collateral, a lender's failure to secure the interest of both spouses will result in the lender holding an interest in only the survivorship interest of one spouse. *See, e.g.*, *In re Arango*, 992 F.2d at 613 (citing *Robinson v. Trousdale County, TN*, 516 S.W.2d 626, 632 (Tenn. 1974)).

8

This is not how the Aurora Deed of Trust is constructed. On page 1—in the same "DEFINITIONS" section cited by HHP—"Note" is defined as, "the promissory note *signed by Borrower*." (J. Stip. Ex. 2, at 1) (emphasis added).  In Paragraph 13 there is a *Borrower* that explicitly *does not* execute the Note but does sign the Deed of Trust to convey an interest in property to secure the Note.  Paragraph 13 re-designates the second kind of Borrower as a "Co-signer." Then, Paragraph 13 states that "any *other* Borrower"—a Borrower who is *not* a Co-signer because they *have* signed the Note—can modify the terms of the debt without the Co-signer's consent. These words make complete sense if *Borrower* can, depending on context, include someone who signs the Deed of Trust to convey their interest in property without also being obligated on the Note.  HHP's tortured reading creates an impossibility: all *Co-signers* have to be *Borrowers*; all *Borrowers* have signed the Note; only *Borrowers* who have *not* signed the Note can be *Co-signers.*

More reasonably, "Borrower" is used in two different senses in the Aurora Deed of Trust. The document contemplates a *Borrower* who has signed the Note and a *Borrower* who has not signed the Note. A Borrower who has not signed the Note is renamed a "Co-signer" by Paragraph 13 for purposes of conveying his interest in trust to secure the debt of a Borrower who has signed the Note.

### 2.  All Borrowers convey their interests in the Property

The issue then becomes whether dual use of the word Borrower renders the document a conveyance into trust of only Lata Surti's interest in the Property.  To answer that question, Tennessee law requires consideration of the whole document.[9]  There are

---

[9]  See below.

two clauses of conveyance in the Aurora Deed of Trust—one on page 1 and one on page 8. The first conveys the interest of Lata Surti as a Borrower who also signed the Note. The other conveys Tarun Surti's interest as a Borrower who Co-signed the Deed of Trust but did not sign the Note. Both clauses contain language fully effective under Tennessee law to convey their respective interests in the Property. Together the two clauses gave Aurora a security interest in the whole of the tenancy by the entirety.

There is no ambiguity in the use of Borrower in two different senses with respect to the validity of the conveyances into trust. All Borrowers—whether signers of the Note or not—have explicitly conveyed their interests into trust to secure the Note. Ambiguity arises when the words of a document create uncertainty of meaning.[10] There is no uncertainty that the words of this document require anyone who signs as a Borrower or as a Co-signer to convey their interest in the property to secure the Note. If there is any ambiguity, it is that there can be Borrowers who convey their interests to secure the Note who are not also the kind of Borrowers who have signed the Note itself. In a contest with respect to liability on the Note, this dual use of the word Borrower could be material. Here, the different senses of the word Borrower do not threaten the effectiveness of the Aurora Deed of Trust to convey the interests of both kinds of Borrowers to secure the Note.

### 3. Tennessee law recognizes exceptions to the *traditional rule*

Case law from Tennessee and other jurisdictions supports this construction of the Aurora Deed of Trust, though not perfectly. Born during a time when many technical rules of conveyancing prevailed and when women faced disabilities with respect to the

---

[10] See below.

10

ownership and transfer of real property,[11] the traditional rule "is that a deed is void as to any party signing it who is not named therein as grantor. If the deed is signed by two persons, only one of whom is named in the body thereof, it is the deed of that one only." 2 PATTON & PALOMAR ON LAND TITLES § 335 (3d. ed.). *See Berrigan v. Fleming*, 70 Tenn. 271 (1879) ("The weight of authority undoubtedly is that an estate in land can not be conveyed except by an instrument which designates the grantor by name or otherwise, and purports to convey his property. Grantor must be a party to the efficient and operative parts of the instrument on conveyance."); *Daly v. Willis*, 73 Tenn. (5 Lea) 100 (1880) ("A mortgage of land, purporting on its face to be by the husband alone, will not bind the wife who merely signs it."). *See also Ethridge v. TierOne Bank*, 226 S.W.3d 127 (Mo. 2007) ("'Signing, sealing, and acknowledging a deed by the wife in which her husband is the only grantor, . . . will not convey her estate.'"); *Manning v. Wingo*, 577 So.2d 865 (Ala. 1991) ("'When a conveyance is subscribed by more than one person and one of the signers' names is not shown in the granting clause or body of the instrument, such conveying instrument is void as to that person.'""); *Whitaker v. Langdon*, 195 S.W.2d 285 (Ky. App. 1946) ("It is fundamentally necessary that a conveyance shall use the specific names of its grantors in the body of the instrument in order to pass valid title out of such grantors.").

As later Tennessee decisions recognize, many of the cases just referenced "were dealing with an attempt by a married woman to convey her interest in land by merely signing the instrument following the name of her grantor husband." *Polston v. Scandyln*, 108 S.W.2d 1104, 1108 (Tenn. Ct. App. 1937). During the early history of Tennessee, a

---

[11] See below for further discussion.

married woman's ability to own or convey property was highly circumscribed. "The power of married women to convey their general estate in lands by deed is vested in them by . . . statute only when their husbands join in the execution of the deed, or, in other words, their incapacity to convey real estate so held by them is removed, so as to enable them to convey by joint deed of the husband and wife, with proper privy examination of the latter, . . . in order to effect a valid conveyance of the title of a married woman to her general estate the statute must be strictly pursued." *Insurance Co. of Tenn. v. Waller*, 95 S.W. 811, 814 (Tenn. 1906).

Also, the traditional rule grew up at a time when technical words and phrases in conveyances (and wills) were strictly observed and enforced by the courts. In a battle between the "premises" and the "habendum" clauses in a deed in 1931 in *Pryor v. Richardson*, 375 S.W.2d 114 (1931), the Supreme Court of Tennessee had this to say about the passing of these technical rules and the new focus on ascertaining intent from the whole of an instrument:

> Technical rules in the construction of conveyances in this state have been abandoned, and, where possible, the intention of the grantor, as ascertained from a consideration of the entire instrument, is given effect.
> . . . .
>
> "The true rule is to look to the whole instrument, without reference to formal divisions, in order to ascertain the intention of the parties, and not to permit antique technicalities to override such intentions."
> . . . .
>
> . . . "A deed must be so interpreted as to make it operative and effective in all its provisions."
> . . . .
>
> . . . The intention of the grantor is to be ascertained and given effect by examination of the entire instrument, "regardless of the mere formal

12

divisions of the instrument"; and in this search for intent, no preference is to be given to premises over habendum because of position or form.

    . . . .

     . . . [I]t is clearly the duty of the court to . . . reconcile the apparently conflicting terms when consistent with well recognized rules of construction.

*Pryor*, 37 S.W.2d at 114-16 (internal citations omitted). *See also Ballard v. Farley*, 226 S.W. 544 (Tenn. 1920) ("[I]f clauses or parts are conflicting or repugnant the intention is gathered from the whole instrument instead of from particular clauses, and if it is the clear intent of the grantor that apparently inconsistent provisions shall all stand, it will be given that effect if possible. According to the trend of modern decisions, the technical rules of the common law as to the division of deeds into formal parts will not prevail as against the manifest intention of the parties as shown by the whole deed.").

Often the traditional rule produced harsh outcomes and was almost as often modified by the courts based on fine factual distinctions. In *Kelton v. Brown*, 39 S.W. 541 (Tenn. App. Ct. 1897), the Tennessee Court of Chancery Appeals rejected an attempt to defeat a mortgage deed based on the absence of the wife's name in the conveyance portion of the deed when the wife had signed the deed. In *Kelton*, the only name to appear in the deed was that of the grantee. The deed used the pronouns "I" and "We" when referring to the grantor(s) but did not name the wife. The court concluded that "[n]o particular form of words is essential. It is sufficient if the deed, however short and inartificial it may be, contains words showing the intention of the maker." *Id.* at 543. The repetitive use of the plural "we" in the deed was "sufficient to show the purpose and intention of the parties, and to show that the wife intended to and did join the husband in the execution of the deed[.]" *Id.* Even as early as 1897, the *Kelton* court distinguished earlier Tennessee

13

cases—*Berrigan v. Fleming*, 70 Tenn. 271 (1879), and *Daly v. Willis*, 73 Tenn. 100 (1880)—in which a wife's signature was challenged as insufficient to convey an interest in property absent operative words of conveyance. *See also Conyers v. Frye*, 58 S.W. 1126, 1128 (Tenn. Ct. App. 1900) ("[I]f a married woman signs a deed with her husband, . . . , she is bound by it, although her name does not appear in the body of the instrument. It is immaterial whether the binding force of such deed results technically by way of estoppel, or in some other form, she cannot attack it.").

Admittedly on different facts, the Tennessee Court of Appeals recently rejected an argument analogous to that made here by HHP. In *Thornton v. Countrywide Home Loans, Inc.*, No. W1999-02086/02087-COA-R3-CV, 2000 WL 33191366 (Tenn. Ct. App. Oct. 23, 2000), Ms. Thorton sought to avoid the effect of her signature at the end of a deed of trust by arguing that she was not identified as a grantor elsewhere in the document. The Tennessee Court of Appeals rejected this argument based on two findings: (1) Ms. Thornton was identified elsewhere in the deed of trust as a "party of the first part" which the court found was a substitute for "grantor"; and (2) Ms. Thornton "signed the deed of trust at the bottom, under her husband's signature, in order to convey her interest in the home." *Thornton v. Countrywide Home Loans, Inc.*, 2000 WL 33191366, at *5. The Court of Appeals said:

> While we agree with [Ms. Thornton] that she is not termed a "grantor" on the Countrywide deed, we do not find this fact dispositive. The Countrywide deed of trust secured the loan which the couple used to purchase their home. Ms. Thornton signed the deed of trust at the bottom, under her husband's signature, in order to convey her interest in the home. We do not believe that Countrywide's failure to list Ms. Thornton as a grantor has any effect upon her conveyance. It is simply unbelievable that a bank would consent to

14

secure the entire amount of the purchase price of a home with something
less than a complete interest in the property.

*Thornton*, 2000 WL 33191366, at *5.

The two cases most nearly on point cited by the parties are ironically both from
Missouri but reach opposite conclusions on slightly different facts.

HHP relies most heavily on the opinion of the Missouri Supreme Court in *Ethridge*.
In *Ethridge*, husband and wife refinanced the home they owned as tenants by the
entireties. The loan documents identified the husband as a married man, and stated
incorrectly that the home was his sole and separate property. The deed of trust defined
"Borrower" as "David Ethridge." The deed of trust contained only one signature line with
the husband's name typed beneath it. The wife signed the deed of trust below her
husband's signature. They both initialed each page. *Ethridge*, 226 S.W.3d at 129-30. The
husband died, and the wife sought to retain the home free of the refinanced debt.

The Missouri Supreme Court found 19th Century case law controlled its decision in
favor of the wife: "'The party in whom the title is vested, [sic] must use appropriate words
to convey the estate. Signing, sealing, and acknowledging a deed by the wife in which her
husband is the only grantor, [sic] will not convey her estate.'" *Ethridge*, 226 S.W.3d at 132
(quoting *Bradley v. Missouri Pac. Ry. Co.*, 4 S.W. 427, 428 (Mo. 1887)) (alteration in
original).

Aurora relies on a more recent Missouri bankruptcy court decision that distinguished
*Ethridge*: *Rouse v. Wells Fargo Bank, N.A. (In re Suhrheinrich)*, 2009 WL 3335027.
Michael Suhrheinrich borrowed $208,000 to purchase real property. To secure repayment,
Michael and his wife, Barbara Suhrheinrich, executed a deed of trust. The deed of trust

15

referred to the grantor as "Borrower" and in the definitions section "Borrower" was defined as "Michael J. Suhrheinrich, A Married Man." *In re Suhrheinrich*, 2009 WL 3335027, at \*1. However, on the signature page at the end of the deed of trust and on a cover page, both Michael and Barbara Suhrheinrich were referred to as "Borrowers." On the signature page Barbara Suhrheinrich's name was typed along side the preprinted word "Borrower."

The Suhrheinriches filed bankruptcy and their Chapter 7 trustee challenged the validity of the deed of trust on the basis of *Ethridge.* The trustee argued that the real property was owned by the Suhrheinriches as tenants by the entirety but only Michael was a grantor under the deed of trust—a defect that rendered the deed of trust invalid under Missouri law. The bankruptcy court analyzed *Ethridge* and found "slight" but important distinctions that warranted a different outcome:

> [T]he Court finds it significant that Barbara Suhrheinrich's name was typed below the line where her signature appears, alongside the preprinted word "Borrower." The presence of these notations on the DOT takes Barbara Suhrheinrich's signature beyond the mere "signing, sealing, and acknowledging a deed by the wife in which her husband is the only grantor will not convey her estate" described in *Ethridge*—it is an indication that the DOT was drafted, and Barbara Suhrheinrich signed it, with the intention that she be a grantor ("Borrower") under the DOT.
>
> Second, the Court accepts [the bank's] contention that the cover page constitutes part of a deed of trust and should be considered in determining whether Barbara Suhrheinrich is a grantor under the DOT.
> . . . .
>
> Finally, Barbara Suhrheinrich's testimony bolsters the Court's conclusion that she is a grantor/borrower under the DOT. Barbara Suhrheinrich testified that she intended to convey an interest in her home to [lender] . . . and understood that she had to sign the DOT in order for it to be valid. In contrast to the wife in *Ethridge* who signed the deed of trust because her husband "was the 'head of household' and made all the couple's financial decisions," Barbara Suhrheinrich previously worked as a bookkeeper for a mortgage company and testified that she understood the

16

necessity for both spouses to sign a deed fo trust intended to encumber jointly owned property.

      . . . [T]he Court finds that the DOT's failure to list Barbara Suhrheinrich as a Borrower on the second . . . page of the DOT does not invalidate the DOT. When the DOT is considered in its entirety, it unambiguously names both owners of the property subject to the DOT and is therefore valid under Missouri law. . . . [T]o the extent there is ambiguity in the DOT, the evidence shows that Barbara Suhrheinrich fully intended to convey to [lender] a mortgage lien interest in her home.

*Id.* at *3 (internal citations and footnote omitted).

### 4.  The Aurora Deed of Trust places this case among the exceptions

This case is more like *Suhrheinrich* than *Ethridge*, however the facts here are more compelling than either case that Tarun Surti conveyed his interest to Aurora. Unlike *Ethridge*, there is no claim anywhere in the Aurora Deed of Trust that Lata Surti was the only owner of the Property. Just the opposite appears everywhere in the Aurora Deed of Trust—Lata Surti is identified as "a married person" and the incorporated derivation clause shows that the Property was conveyed to "Tarun N. Surti and wife, Lata T. Surti."

The Aurora Deed of Trust identifies a "Co-signer" who signs as a "Borrower" to "mortgage, grant and convey the co-signer's interest in the property" to secure the debt of another. "Co-signer" is a grantor on page 8 of the Aurora Deed of Trust as much as any other "Borrower" is a grantor on page 2. As in *Suhrheinrich*, Tarun Surti signed the Aurora Deed of Trust on page 11, on a line with "Borrower" preprinted, and in this case after a sentence stating that the Borrower(s) signing below accept and agree to the terms above—including the conveyance in Paragraph 13. This is all consistent with the conclusion that Tarun Surti intended to be a Borrower and clearly identifying him as the same person identified in the derivation clause as an owner of the Property.

17

There is no cover page here but the Aurora Deed of Trust contains the important Paragraph 13 that makes complete sense of Tarun Surti's initials on each page and of his signature on a "Borrower" line by explaining that he is a "Co-signer" who conveyed his interest in the Property to secure the Note signed by his wife. No separate clause of conveyance anything like Paragraph 13 appears in *Ethridge*. There is no separate grantor clause or reference to the possibility of a co-signer who is also a grantor in either *Ethridge* or *Suhrheinrich*. The second grantor clause in Paragraph 13 firmly cements the Aurora Deed of Trust as effective to convey Tarun Surti's interest in the Property.[12]

Other cases cited by the parties are distinguishable for many of the same reasons just addressed. In *Sullivan v. Mortgage Electronic Registration Systems, Inc. (In re Wirth)*, 355 B.R. 60, 61 (N.D. Ill. 2005), the deed of trust defined "Borrower" as "Marilyn Marsha Williams, a single person." Similar to *Ethridge,* this definition was inaccurate. Williams was married to Wirth at the time though that relationship does not appear anywhere in the deed of trust or in any derivation clause.

Wirth signed the deed of trust on a "Borrower" line. The deed of trust in *Wirth* had a Paragraph 13 similar to Paragraph 13 in the Aurora Deed of Trust.[13] The bankruptcy court in *Wirth* accepted the argument made here by HHP that Wirth could not be a "Co-signer" because Williams was the only "Borrower" defined in the deed of trust.

---

[12] As in *Suhrheinrich*, this conclusion is confirmed by the unchallenged affidavits of Lata Surti and Tarun Surti. This extrinsic evidence of intent becomes relevant only if the document is ambiguous. More about this below.

[13] The coincidence of a Paragraph 13 in *Wirth* nearly identical to the Paragraph 13 in Aurora's Deed of Trust is not discussed by the parties but may be explained by the notation on the Aurora Deed of Trust, "Fannie Mae/Freddie Mac Uniform Instrument Form 3043."

The district court in *Wirth* acknowledged that Wirth's signature on a line designated for a "Borrower" could not be easily reconciled with the fact that only Williams was defined as a Borrower elsewhere in the document. As in *Ethridge*, the district court in *Wirth* cited early 19th Century Illinois case law to support its conclusion that Wirth was "not a party" to the deed of trust and "his interest in signing the agreement is irrelevant." *Wirth*, 355 B.R. at 61.

The district court in *Wirth* did not address the possibility that "Borrower" was used in more than one sense in the deed of trust or the possibility that "Borrower" was ambiguous in light of Paragraph 13 if it meant only a Borrower who had *not* signed the note. There is no mention of the definition of "Note" in the *Wirth* deed of trust—a provision of the Aurora Deed of Trust that challenges the logic in *Wirth*. There is no mention in *Wirth* of a derivation clause. The derivation clause is incorporated into the Aurora Deed of Trust reveals that Tarun Surti is not a stranger to the document but was married to the other "Borrower" at the time the "married person" took title to the Property. Perhaps more importantly, *Wirth* too lightly dismisses all inquiry into the intent of the parties.

In *Kindt v. ABN Amro Mortgage Group, Inc. (In re Wallace),* No. 06-1322, 2007 WL 6510864, at *1-*2 (Bankr. S.D. Ohio Nov. 15, 2007) (unpublished), an Ohio bankruptcy court relying in part on Tennessee decisions, concluded that a mortgage which "contains no reference whatsoever" to Mrs. Wallace did not encumber Mrs. Wallace's one-half interest in the property mortgaged—notwithstanding that Mrs. Wallace signed and acknowledged the mortgage. *Wallace* is distinguishable because there is no Paragraph 13 or similar clause that would explain the presence of Mrs. Wallace's signature at the end

19

of the deed of trust. Unlike Tarun Surti in the Aurora Deed of Trust, Mrs. Wallace was not identified as a "Borrower" by a preprinted line—her handwritten addition at the end of the *Wallace* deed of trust was without explanation.

Finally, *Schlarman v. Chase Home Finance, LLC (In re Padgitt)*, No. 07-2063, 2008 WL 4191517, at *2 (Bankr. E.D. Ky. Sept. 11, 2008) (unpublished), stands for the proposition that under Kentucky law a spouse not identified as a grantor in a deed of trust does not convey their interest in mortgaged property unless "they were named or otherwise sufficiently identified in the body of the instrument to make it clear that they were grantors." There is no mention in *Padgitt* of anything like Paragraph 13 of the Aurora Deed of Trust. In *Padgitt*, only a "bare" signature appears—there is no indication that the signer was a "Borrower" of any sort under the deed of trust. There was no separate granting or conveyancing clause in *Padgitt* for a co-signer to explain the extra signature.

### 5.  *Contractual ambiguity would not change the result*

The outcome here respects rules of construction recognized by the Tennessee courts. If the language of a contract is not ambiguous, the court determines the intention of the parties from the four corners of the contract as written. *See, e.g.*, *Petty v. Sloan*, 277 S.W.2d 355, 361 (Tenn.1955). *Carolyn B. Beasley Cotton Co. v. Ralph*, 59 S.W.3d 110, 113-14 (Tenn. Ct. App. 2000). "[W]here the intention is uncertain, resort may be had to subordinate rules of construction." *Hicks v. Sprankle*, 257 S.W. 1044, 1045 (Tenn. 1924) (citations omitted). A contract is ambiguous if "it is of uncertain meaning and may fairly be understood in more ways than one." *Empress Health & Beauty Spa, Inc. v. Turner,* 503 S.W.2d 188, 190-91 (Tenn. 1973).

Here, an argument could be made that the Aurora Deed of Trust is ambiguous insofar as "Borrower" is defined both as one who signed the Note and as a "Co-signer" who did not sign the Note but signed the Deed of Trust to convey an interest in the Property to secure the Note. As explained above, this dual use of the word "Borrower" does not create uncertainty with respect to the outcome determinative issue here: all Borrowers—those that have and those that have not signed the Note—conveyed their interests in the Property by signing the Aurora Deed of Trust. But if this dual use of Borrower can be construed to be a material ambiguity, the further analysis then permitted by Tennessee law does not change the outcome for HHP.

"If the language of the contract is not free of ambiguity, extrinsic evidence, such as evidence of the interpretation the parties themselves have given the contract, may be received to determine the intention of the parties." *Beaty v. Brock & Blevins Co.*, 319 F.2d 43, 46 (6th Cir. 1963) (citing *Fidelity-Phenix Fire Ins. Co. of New York v. Jackson*, 181 S.W.2d 625 (Tenn. 1944)). Uncontested affidavits of Lata Surti and Tarun Surti confirm the couple's understanding and intention to encumber their combined interests in the Property to secure repayment of the Aurora debt. The Surti's bankruptcy schedules list the Aurora mortgage as secured by both debtors' interests in the Property. There is no contrary evidence.

### 6. *HHP's notice of the Aurora Deed of Trust*

Even if HHP could prevail as a matter of contract construction, HHP's position fails to account for the effect of inquiry notice under Tennessee case law. The Tennessee

Supreme Court exhaustively set forth the relevant forms of notice in *Blevins v. Johnson*

*County*, 746 S.W.2d 678, 682-83 (Tenn. 1988):

> Notice is generally said to take two forms, actual or constructive. Constructive notice is notice implied or imputed by operation of law and arises as a result of the legal act of recording an instrument under a statute by which recordation has the effect of constructive notice. "It has been well said that 'constructive notice is the law's substitute for actual notice, intended to protect innocent persons who are about to engage in lawful transactions. . . .'" Nevertheless, "[a]ctual notice must be given in the absence of a statute providing some means for constructive notice." Constructive notice encourages diligence in protecting one's rights and prevents fraud. If either no statute requires recordation to create constructive notice or a recordable instrument has not been property recorded, then actual notice is required to estop a person.
>
> While "[i]t is true that recordation creates constructive notice as distinguished from actual notice, in that ordinarily actual notice is when one sees with his eyes that something is done," another kind of notice occupying what amounts to a middle ground between constructive notice and actual notice is recognized as inquiry notice. . . . [I]n Tennessee, [inquiry notice] has come to be considered as a variant of actual notice. "'The words 'actual notice' do not always mean in law what in metaphysical strictness they import; they more often mean knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts.'" Even a good faith failure to undertake the inquiry is no defense. Thus, "'[w]hatever is sufficient to put a person upon inquiry, is notice of all the facts to which that inquiry will lead, when prosecuted with reasonable diligence and good faith.'"
> . . . .
>
> . . . [A] recital in a deed may give rise to the necessity to make an inquiry to determine the facts recited or be estopped from asserting a state of affairs different from those that would have been revealed by diligent investigation. This rule controlling inquiry notice is well-established in Tennessee.

*Blevins v. Johnson County*, 746 S.W.2d at 682-83 (internal citations omitted). Facts

sufficient to put a party upon inquiry will not allow the party to "'protect himself upon the

ground that he intentionally omitted to make inquiry in order to avoid knowledge[.]'" *Id.* at

22

684 (quoting *Haywood v. Ensley & Haywood*, 27 Tenn. 459, 467 (1847)). *See also Fitzpatrick v. Fredenberg (In re Wilson)*, Adv. No. 09-3162, 2010 WL 56080 (Bankr. E.D. Tenn. Jan. 5. 2010).

HHP does not contest that the Aurora Deed of Trust is in the chain of title of the Property.  Nor does HHP assert that it was unaware of the Aurora Deed of Trust when it extended its loan and took its mortgage.  HHP does not claim that Debtors in anyway led HHP to believe that the Aurora Deed of Trust was limited to Lata Surti's survivorship interest.  HHP has not offered any evidence that it believed the Aurora Deed of Trust encumbered only Lata Surti's survivorship interest at the time it extended its loan.  Indeed, the Aurora Deed of Trust is listed as a "permitted encumbrance" in Exhibit B of HHP's Deed of Trust.  (J. Stip. Ex. 8, at Ex. B.)

To paraphrase the Tennessee Court of Appeals in *Thornton v. Countrywide Home Loans, Inc.*, 2000 WL 33191366, at *5, it is "simply unbelievable" that Aurora's predecessor would loan Lata Surti $1.2 Million on the strength of her survivorship interest alone.  HHP does not claim by affidavit or otherwise that it made any inquiry with respect to Tarun Surti's signature on the Aurora Deed of Trust.  If HHP had any question regarding the scope of the Aurora Deed of Trust, "[e]ven a good faith failure to undertake inquiry is no defense." *Blevins v. Johnson County*, 746 S.W.2d at 683.

### III. CONCLUSION

The Aurora Deed of Trust encumbers the interests of both Lata Surti and Tarun Surti in the property located at 899 South Curtiswood Lane, Nashville, Tennessee. A separate order will be entered granting Aurora's motion for summary judgment.

# UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

In re:  TARUN N. SURTI and LATA T. SURTI,

        *Debtor.*

HHP-BRENTWOOD, L.L.C.,

        *Plaintiff,*

    *v.*

Aurora Loan Services, LLC,

        *Defendant*.

Case No. 3:09-01213
Chapter 11

Hon. Keith M. Lundin

Adv. No.  3:10-0064A

## APPEARANCES

Austin Lenoy McMullen
Bradley Arant Boult Cummings LLP
Po Box 340025
1600 Division Street, Ste. 700
Nashville, TN 37203
615-252-2307
Attorney for Plaintiff

Edward Dale Russell
Loeb & Loeb LLP
1906 Acklen Ave.
Nashville, TN 37212
615-749-8314
Attorney for Defendant

```
This Order has Been electronically
signed.  The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.
```